# Exhibit A



# State of Rhode Island and Providence Plantations
## SUPERIOR COURT

[ ] PROVIDENCE/BRISTOL   [ ] KENT   [x] WASHINGTON   [ ] NEWPORT

CIVIL ACTION, FILE No
WC-2007-0219

DOMINION DIAGNOSTICS, LLC
**Plaintiff**

THE J. BOLEN GROUP, LLC and
JENNIFER BOLEN
**Defendant**

## Summons

*To the above-named Defendant:* The J. Bolen Group, LLC

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon Mark A. McSally Plaintiff's attorney, whose address is 28 Caswell Street, Narragansett, RI 02882 an answer to the complaint which is herewith served upon you within 20 days after service of this summons upon you, exclusive of the day of service.

If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

As provided in Rule 13(a) unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

_C. R____
**CLERK**

Dated: April 3, 2007

(Seal of the Superior Court)

S-135 (REV. 10/00)

STATE OF RHODE ISLAND
WASHINGTON, S.C.                                SUPERIOR COURT

DOMINION DIAGNOSTICS, LLC            :
                                     :
    -vs-                             :   C. A. No.  WC-2007-0219
                                     :
THE J. BOLEN GROUP, LLC and          :
JENNIFER BOLEN                       :

## COMPLAINT

1. Plaintiff, Dominion Diagnostics, LLC ("Dominion"), is a limited liability company organized and existing under the laws of the Commonwealth of Virginia and is authorized to do business in the State of Rhode Island, having a principal place of business located at 211 Circuit Drive, North Kingstown, Rhode Island.

2. Defendant The J. Bolen Group, LLC ("Bolen Group") is, upon information and belief, a limited liability company organized and existing under the laws of the State of Tennessee, having a principal place of business located in Knoxville, Tennessee.

3. Defendant Jennifer Bolen ("Bolen") is, upon information and belief, a resident of the State of Tennessee.

4. On or about December 8, 2005, in the State of Rhode Island, the plaintiff and defendants entered into a Consulting Agreement. A copy of this Consulting Agreement is attached hereto as Exhibit A.

5. The Consulting Agreement set forth the terms and conditions of a relationship between the plaintiff and defendants and provided that the defendants would provide certain assistance to the plaintiff in its efforts to obtain additional clients in the field of pain management. Attachment A to the Consulting Agreement sets forth the general duties of the

defendants, which include but are not limited to assisting Dominion in obtaining new accounts, visiting potential accounts, recommending Dominion to potential accounts, participating in various regional workshops and conferences with Dominion, and otherwise working to coordinate and promote Dominion's services.

6. The Consulting Agreement also provided as follows:

> Neither Dominion Diagnostics, Or The J. Bolen Group, LLC, And Their Employees, Or Contracted Workers Will Enter Into Any Similar Arrangement (Either Formal Or Informal) With A Competitor Or Competitors Of Either Party During The Term Of This Agreement Or For Twelve Months After Its Expiration.

7. On or about August 17, 2006, defendants, pursuant to the terms of the Consulting Agreement, exercised their rights to terminate the Consulting Agreement. The termination was effective as of September 17, 2006. Subsequent to the termination, plaintiff's counsel on February 13, 2007, sent a notice to defendants, reminding them of their obligations pursuant to the Consulting Agreement.

8. Despite the explicit terms of the Consulting Agreement and despite the notice provided to defendants, defendants have breached the terms of the Consulting Agreement and have entered into contractual arrangements with competitors of Dominion.

9. During the period of March 24 through March 27, 2007, Dominion attended the 2007 American Society for Pain Management Nursing National Conference. Bolen was a speaker at this conference. As part of the conference materials, Dominion received disclosures regarding potential conflict of interest by the speakers. The disclosure by Bolen Group and Bolen stated that Bolen was on the Speaker's Bureau of Calloway Laboratories and AIT Labs. Both Calloway Laboratories and AIT Labs are direct competitors of Dominion, and all three market their services to the same physician groups and practices. A copy of the disclosure notice provided to Dominion is attached hereto as Exhibit B.

10. Defendants, by entering into agreements with Calloway Laboratories and AIT Labs, have breached the terms of the Consulting Agreement and have caused damage to Dominion.

WHEREFORE, Dominion requests that this Court enter judgment against the defendants as follows:

1. Enter a temporary restraining order and permanent injunction, restraining and enjoining the defendants from violating the terms of the Consulting Agreement and specifically requiring them to abide by the terms of the Consulting Agreement set forth herein.

2. Award damages to Dominion in an amount sufficient to compensate it for the loss caused by defendants' breach of the Consulting Agreement.

3. Award Dominion attorney's fees resulting from the defendants' breach of the Consulting Agreement.

4. Award such other relief as the Court deems to be appropriate under the circumstances.

Dated: April 3, 2007

MARK A. MCSALLY - #3006
Kelly, Kelleher, Reilly & Simpson
28 Caswell Street
Narragansett, RI 02882
(401) 789-7800
FAX: 401-789-6990

(joan) dominion.v.bolen.group/complaint-4/2/07

3

# CONSULTING AGREEMENT

THIS CONSULTING AGREEMENT (the "Agreement") is made at North Kingstown, Rhode Island, this 8th day of December, 2005, by and between The J. BOLEN GROUP, LLC, a Tennessee limited liability company, located at 9040 Executive Park Dr., Suite 120, Knoxville, Tennessee 37923 (the "Consultant"), and DOMINION DIAGNOSTICS, LLC, a Rhode Island Limited Liability Company, located at 21 Circuit Drive, North Kingstown, Rhode Island 02852 (the "Company").

## RECITALS

A.  Company is a clinical laboratory providing urine drug testing services to pain management practices, substance abuse clinics and related entities.

B.  Consultant is a medico-legal consulting firm that works with pharmaceutical companies, physicians, pharmacists, and other providers nationwide to counsel regarding compliance with state and federal guidelines, laws, and regulations concerning the use of opioids to treat chronic and intractable pain patients.

C.  Company wishes to retain the services of Consultant on the terms described below, and Consultant has agreed to provide such services.

## AGREEMENT

In consideration of the foregoing, and of their mutual promises contained herein, the parties agree as follows:

1.  **Engagement and Term.**

Company hereby retains Consultant to render sales and business consulting services as requested by Company and further described in Attachment A for the period beginning December 1, 2005, and ending December 31, 2007. This term may be extended by a writing signed by both of the parties.

2.  **Scope of Services.**

Company hereby engages Consultant and the parties agree to the basic scope of services outlined in Attachment A. The parties agree and understand that the actual services to be performed will be identified in specific work orders periodically throughout the term of this agreement.

3.  **Compensation.**

Company and Consultant agree to the compensation arrangement recited in Attachment A, provided, however, that the right to receive sales commissions shall terminate eighteen months after the termination of this Agreement.

Exhibit A

1

4. **Other Agreements.**

Consultant represents and warrants to the Company that Consultant has not entered into any similar agreement with the Company's competitors. Consultant also agrees that it will not enter into any agreement with the Company's competitors as long as this agreement is in effect between the parties.

5. **Termination.**

(a) **Without Cause.** This Agreement may be terminated without cause by Consultant or Company on 30 days' written notice.

(b) **With Cause.** This Agreement may be terminated immediately with cause by Consultant or Company upon written notice: (i) by the non-breaching party due to breach of any of the provisions of this Agreement by the other party or (ii) should either party be deemed by any court or governmental agency for any reason to be in violation of any federal or state statute or regulation as a consequence of performing such party's obligations hereunder.

6. **Compliance with Laws.**

The parties agree that this Agreement is subject to, and agree to comply with, all applicable local, state and federal statues, rules and regulations. Notwithstanding their intentions, the parties recognize that this Agreement is entered into in a period of rapid change in the legal framework for the delivery of health care services. In the event of any legislative, judicial, administrative or regulatory change or determination, whether federal or state, which has or would have a significant adverse impact on either party hereto in connection with the performance of such party's obligations hereunder, then the parties agree to modify this Agreement as necessary to comply with then current law. If this Agreement cannot be appropriately modified to comply with the current law without materially affecting a party's rights or obligations hereunder, then it may be terminated by the party materially affected upon written notice to the other party.

7. **Sub-Contractor.**

Consultant shall not hold itself out as an agent or representative of Company. Consultant shall render services hereunder as a sub-contractor and shall have no authority to bind or obligate the Company in any manner. Consultant and Company intend that this Agreement creates only a contractor/sub-contractor relationship between them. This Agreement is not intended to create, nor shall it be construed to create, any relationship between the Consultant and the Company other than that of independent entities contracting for the purpose of effecting provisions of this Agreement. Consultant agrees to make all required employment tax withholds and deposits, including but not limited to unemployment and workers' compensation charges, with the relevant government agencies.

2

8. <u>Insurance</u>.

Consultant shall its sole cost and expense, obtain and maintain in full force and effect during the continuation of this Agreement Workers' Compensation insurance to the extent required by law. Consultant will provide the Company with a certificate of insurance evidencing such coverage.

9. <u>Taxes</u>.

Consultant agrees to comply with all applicable laws, ordinances, and regulations, Federal, state and local, and pay all taxes and F.I.C.A. required to be paid as a result of Consultant's activities hereunder. The Company is not liable for any taxes (Federal, state or local) on behalf of Consultant. Consultant is also responsible for any contributions which may be required under the Workers' Compensation, Disability and Unemployment Insurance laws.

10. <u>Confidentiality</u>.

A. "Confidential Information: means any information, concerning in any way, the Company or its members, affiliates and/or subsidiaries, including but not limited to its technologies, products, services, inventions, software, customers, markets, business plans or strategies, regardless of medium of recordation, that is disclosed, discovered or otherwise learned by Consultant as a result of the Work; provided however, that "Confidential Information" shall not include information within the public domain.

B. Except as absolutely necessary to providing services pursuant to this Agreement, or unless specifically authorized in writing by the Company, Consultant shall never, directly or indirectly, use, duplicate or disclose to others any Confidential Information, and Consultant shall take all reasonable steps and shall do all things requested by the Company to prevent others from using, duplicating or disclosing Confidential Information.

C. All Confidential Information disclosed by or belonging to the Company is and shall remain the exclusive and valuable property of the Company.

D. Immediately upon the expiration or termination hereof, or upon request by the Company, Consultant shall immediately deliver to the Company all products, components and equipment provided by the Company and all records or other things containing, embodying or summarizing, in whole or in part, any Confidential Information, in any media, including without limitation any copies thereof.

E. This Section 10 of this Agreement shall survive the expiration or earlier termination of this Agreement without time limitation.

3

11. Assignment.

The Consultant's personal services are of unique benefit to the Company; therefore, this Agreement may not be assigned by Consultant or the Company without the prior written consent of the other party.

12. Successors.

This Agreement shall be binding upon any successor of the Company, and any successor shall be deemed substituted for the Company, under the terms of this Agreement. As used in this Agreement, the term "successor" shall include any firm, person, corporation or other business entity, which at any time, whether by merger, or purchase or otherwise, acquires all or substantially all of the assets or business of the Company.

13. Waiver of Breach.

Failure to insist upon strict compliance with any of the terms, promises or conditions of this contract shall not be deemed a waiver of such term, promise or condition, not shall any waiver or relinquishment of any right or power hereunder at any one or more times be deemed a waiver or relinquishment of such right or power, unless so specifically stated.

11. Severability.

The invalidity or unenforceability of any provisions hereof shall in no way affect the validity or enforceability of any other provision.

14. Modification.

This Agreement cannot be amended, changed, modified, or discharged except by an agreement in writing signed by both the Company and Consultant.

15. Governing Law.

This Agreement and the performance of this Agreement shall be governed by the laws of the State of Rhode Island.

16. Captions.

The captions at the beginning of the several sections and subsections of this Agreement are not part of this context hereof but are only guides or labels to assist in locating and reading such sections and subsections. They should be given no effect in construing this Agreement.

17. Binding Effect.

Except as otherwise herein expressly provided, this Agreement shall inure to the benefit of and be binding upon the Company, its successors and assigns, and Consultant, its successors and assigns.

18. **Entire Agreement.**

This Agreement contains the entire agreement of the parties and no representations, inducement, promises, or agreements, oral or otherwise, between the parties, not embodied herein shall have any force or effect.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective on the date first written above.

CONSULTANT:                                    COMPANY:

J. Bolen Group, LLC                            Dominion Diagnostics, LLC

By: _____                    By: _____
Its: _____President_____                    Its: _____CEO_____

# ATTACHMENT A

### AGREEMENT BETWEEN
### DOMINION DIAGNOSTICS, LLC AND THE J. BOLEN GROUP, LLC
### DECEMBER 1, 2005

**THE J. BOLEN GROUP, LLC**

- Assist Dominion In Obtaining Accounts
  - Recommending Dominion
  - Phone Calls
  - Joint Visits
  - Grand Rounds
  - Luncheons
  - Regional Dominion And/ Or J Bolen Group, LLC Arranged Presentations
  - Workshops
  - Training Existing Dominion Sales Personnel, And Dominion Current Accounts, Or Potential Accounts
  - Identifying New Business Opportunities

- Coordinate And Participate With Dominion At Invited Professional Pain Management Conferences And Exhibitions (Some Examples Follow)
  - New England Pain Association (VT) February 3-5, 2006
  - American Academy of Pain Medicine (CA) February 23-25, 2006
  - American Society of Pain Management Nursing (FL) March 30 -April 2, 2006
  - American Society Of Orthopaedic Medicine (DC) April 26- 29, 2006
  - American Pain Society (TX) May 3-6, 2006
  - Texas Pain Society (TX) Spring-Summer, 2006
  - Florida Academy Of Pain Medicine (FL) July 14-16, 2006
  - American Academy Of Pain Management (CA) Autumn., 2006

- Coordinate And Participate With Dominion At Additional Events That Provide Mutually Beneficial Opportunities To Both The J. Bolen Group, LLC, And Dominion Diagnostics
  - Non CME Events And/ Or CME Events Where Dominion Will Be Fairly Represented Vis a Vis Competitors
    - Physicians
    - Nurses
    - Providers (Standard Commercial, Managed Care, HMO'S, Etc.)
    - Pharmaceutical Companies
    - Professional Medical Organizations
    - State Medical Boards, Governmental Agencies (Medicare, Medicaids)

1

## DOMINION DIAGNOSTICS, LLC

- Assist The J. Bolen Group, LLC In Evolving Seamlessly Integrated Presentation Materials (And Ultimately Web-Site Candidate Materials) That Address the Following:

    - A More Diverse Group Of Topics To Support And Augment Legal Issues
    - Current "State Of The Art " In Clinical Toxicology Testing, Where Is the Field Headed
    - The Importance Of Understanding Pharmacokinetics In Diagnostic Testing
    - Strategies For Physicians, Providers, And Laboratories To "Stay Ahead Of The Curve" Proactive Vs. Reactive Strategies
    - New Genomics Markers, Finding Them, Measuring Them, Genotyping, Legal And Ethical Implications For Physicians, Providers, And Governmental Agencies (FDA, Medicare, Medicaid, Enforcement, Etc.)
    - Benefits Utilization, Who Is Going To Pay, Who Will Get Reimbursed, And How? The Importance Of Establishing Relationships With The AMA To Facilitate The Implementation Of New CPT Codes When Required
    - Physician Guidelines When Dealing With Laboratories, Suggested Do's And Don'ts!
    - Highlight Problems, And Suggest A Litany Of Possible Solutions

- Assist The J. Bolen Group, LLC In Enhancing Audit Criteria In Order For The J. Bolen Group, LLC To Offer More Comprehensive Audits To Its Client Base

- Train J. Bolen Group Personnel As Required In Diagnostic Laboratory Methods And Technology

- Refer The J. Bolen Group, LLC To Well Established Dominion Contacts In The Substance Abuse Field (Some Examples Follow)

    - ASAM Physicians And ASAM Professional Groups, Both Regionally, And Nationally
    - Substance Abuse Organizations, And Training Venues, North Carolina, South Carolina, Etc., Example Include, Among Others, The Winter School, And The Summer School
    - State Agencies, Vermont, North Carolina, South Carolina, Maine

## JOINT COOPERATION

- Serve On Each Others' Advisory Boards
- Mutual Improvements To Both Web-Sites, Recognition Of Each Other On Web-Sites, And Appropriate Links To Each Web-Site And Others As Agreed
- Joint Press-Releases As Appropriate
- Development And Implementation Of Co-Marketing Materials As Appropriate
- Joint Publications As Appropriate, i.e. Monograph On Urine Drug Testing
- Promote And Identify Educational Venues That Highlight The Value Of Clinical Urine Drug Testing
- Develop Evidence Based Medicine Guidelines For Pain Management Physicians, And Clinicians For Clinical Urine Drug Testing, Recognizing And Integrating, Legal, Ethical, And Clinical Criteria Regarding Compliance, Clinical Assessment, Possible Diversion, Clinical Management, And Accuracy And Reliability Of Patient History

- Quarterly News-Letter, Or New Capabilities, Or New Development Highlights, Either Electronic, Printed, Or Both, As Appropriate
- Nationwide Workshops
- Audio And Live Lectures

## GENERAL CONSIDERATIONS

- Dominion Diagnostics Will Provide A Monthly Retainer To The J. Bolen Group, LLC.
- Dominion Will Reimburse The J. Bolen Group, LLC, For Reasonable Expenses For Agreed Upon Services To Be Performed Consistent With The Items Described In This Agreement
- In-Person Services On A Monthly Basis Will Vary As Our Agreement Evolves Over Time, And Are Expected To Ramp Up To The Approximate Numbers As Outlined In Your Letter Of October 31, 2005 (Copy Attached)
- Dominion Proposes To Pay A Commission Of Two Percent (2%) To The J. Bolen Group, LLC, For Accounts Referred To Dominion And Closed, Or Accounts Closed By Dominion Due To The Efforts Of Your Group. The Account Is Considered To Be In Force When A Signed Binding Agreement Is In Place Between Dominion And Account And Upon Receipt Of First Sample From Account By Dominion Diagnostics. Account Commissions Are Generally Paid On the 20th Of Each Month For All Payments Received By Dominion For The Account In Question.
- Dominion Proposes To Pay The J. Bolen Group, LLC The Amount Of $10,000.00 For Its Efforts On Behalf Of Dominion Through November 30, 2005.
- Beginning In December, 2005, And Monthly Thereafter, Dominion Proposes The Following:

  - December, 2005:                              $10,000.00
  - January, February, March, 2006:              $15,000.00 Per Month
  - April, May, June, 2006:                      $18,000.00 Per Month
  - July, August, September, 2006:               $21,000.00 Per Month
  - October, Nov., Dec., 2006:                   $24,000.00 Per Month
  - January, 2007 Through December, 2007:        $25,000.00 Per Month

- The J. Bolen Group, LLC, Will Provide Dominion and Dominion's Clients With A Preferred Membership To The Legal Side Of Pain® Web-Site. The J. Bolen Group, LLC, Will Provide Dominion's Clients With A 30-Minute Prescribing Compliance Consultation To Be Scheduled At Reasonable Intervals. The J. Bolen Group, LLC, Will Further Establish One Day Per Week Where Dominion's Clients Can Speak With Bolen Group Members About Prescribing And Testing Compliance Questions. This "Weekly Discussion" Day Will Serve As An Educational Opportunity And Be Structured For At least Two Hours, But No More Than Four Hours, Of The Designated Day.

## ADDITIONAL CONSIDERATIONS

- Neither Dominion Diagnostics, Or The J. Bolen Group, LLC, And Their Employees, Or Contracted Workers Will Enter Into Any Similar Arrangement (Either Formal Or Informal) With A Competitor Or Competitors Of Either Party During The Term Of This Agreement Or For Twelve Months After Its Expiration
- Other Considerations Will Be Negotiated Into The Final Agreement, Including, But Not Necessarily Limited To, Renewal, Modifications, Expiration, Governing Law, Etc.

2007 American Society for Pain Management Nursing
National Conference
March 24-27, 2007

As an approved provider of continuing education by The Missouri Nurses Association, ASPMN must disclose to the program audience any real or apparent conflict(s) of interest of speakers related to the content of their presentation. The speakers at these activities disclose any significant financial interest/arrangement or affiliation with any corporate organization whose products or services are being discussed in any presentation and with any commercial supporter of an activity. (Financial interest or relationships can include such things as grants or research support, employee member of a speaker's bureau, consultant, major stockholder, etc.)

Disclosure of a relationship is not intended to suggest or condone bias in any presentation, but is made to provide participants with information that might be of potential importance in the evaluation of a presentation.

Significant relationships exist with the following companies/organizations whose products will be discussed.

**Joan Beard** – Speaker Bureau of Purdue Pharma, L.P.

**James Dube'** - He was an employee of Purdue for 5 years, ending in mid-June 2005. He has no future pension funding and owns no stock. I was involuntarily terminated. I harbor no ill feelings to them nor to any other pharmaceutical manufacturer.

Prior to joining Purdue he was or had been on the speaker's bureau of Merck, Pfizer, Ortho-McNeil, Janssen, Knoll, Roxane and had delivered hundreds of presentations on pain management around the United States.

**Patrick Coyne** – I have executed research trials of Prialt® and serve on the RN Advisory Board of Elan Pharmaceuticals.

**Nancy Eksterowicz** – Speaker paid by Smiths Medical

**Daniel L. Kirsch** – Employee of Electromedical Products International, Inc.

**Karen Kaiser** – Recipient of research funding from American Alliance of Pain Initiatives.

**Sandra Merkel** – Consultant to Endo Pharmaceutical

**Colleen Dunwoody** – Consultant to Hospice and Speaker's Bureau with Ortho McNeil

**Lori A. Ladd** – Employed by Purdue Pharma, L.P.

**Jennifer Bolen** – She is a consultant for Ligand-Chronic Pain Network (now King), Abbott, (special consul-American Academy of Pain Medicine). On the Speaker's Bureau of King, Ligand, Abbott, Calloway Laboratories and AIT Labs.

<u>Exhibit B</u>